UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SEATTLE SCHOOL DISTRICT NO. 1,<br><br>Plaintiff,<br><br>v.<br><br>KURT BENSHOOF ,<br><br>Defendant. | CASE NO. 2:23-cv-1829<br><br>ORDER DISMISSING BENSHOOF'S COUNTERCLAIMS |
| KURT BENSHOOF and A.R.W., by and through KURT BENSHOOF,<br><br>Counter-Claimants,<br><br>v.<br><br>SEATTLE SCHOOL DISTRICT NO. 1, NATHAN CLIBER, SARAH SPIERLING MACK, GREGORY NARVER, JESSICA OWEN, and BLAIR RUSS,<br><br>Counter-Defendants. | |

1

## 1.  INTRODUCTION

This is an action for declaratory relief. Plaintiff Seattle School District No. 1 ("District") seeks a judgment from this Court stating that it has permissibly withheld certain information from Defendant Kurt Benshoof under the exceptions found in the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232(g). Dkt. No. 3 at 1. The Court dismissed the District's complaint under Rule 12(b)(1) for lack of subject matter jurisdiction.

The Court turns now to Benshoof's counterclaims against the District and Counter-Defendants King County, Nathan Cliber, Magalie Lerman, Sarah Spierling Mack, Gregory Narver, Jessica Owen, and Blair Russ.[1] Dkt. No. 32. Cliber, Mack, and Narver move to dismiss Benshoof's counterclaims against them under Rule 12(b)(6). Dkt. Nos. 36, 38. The Court GRANTS their motions to dismiss. After reviewing Benshoof's remaining counterclaims, the Court finds his allegations fail to state a claim that provides independent federal jurisdiction, therefore, the Court DISMISSES all of Benshoof's remaining counterclaims sua sponte.

## 2.  BACKGROUND

Benshoof alleges thirteen counterclaims. Dkt. No. 32. Although he purports to raise these counterclaims on behalf of his minor son, A.R.W., the alleged factual background concerns Benshoof's dispute with Jane Addams Middle School over

---

[1] Benshoof filed his Answer and Counterclaims on December 13, 2023. Dkt. No. 8. On January 23, 2024, he filed Amended Counterclaims. Dkt. No. 32. The Amended Counterclaims, Dkt. No. 32, are the operative pleading. Therefore, the Court DENIES as moot Narver and Mack's motion to dismiss at Dkt. No. 24.

1
2
3
4
5
6
7
8
9
10
11
12

certain redacted information in A.R.W.'s school records.[2] Benshoof includes extensive and irrelevant background information spanning 73 pages even though he states that his "causes of action . . . pertain to events between October 12, 2023, and [January 2024]." Given that Benshoof has failed to provide a short, plain, and concise statement of his counterclaims, it is hard to make out the precise contours of his claims. That said, no matter how inartfully pled, the Court must liberally construe a pro se parties' claims to do justice. *Entler v. Gregoire*, 872 F.3d 1031, 1038 (9th Cir. 2017) ("A pro se complaint must be 'liberally construed,' since 'a pro se complaint, however clumsily pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'") (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); see Fed. R. Civ. Proc. 8(e) ("Pleadings must be construed so as to do justice").

13
14
15
16
17

The facts as stated below are from Benshoof's Amended Counterclaims. A.R.W. began attending Jane Addams Middle School in September 2021. Dkt. No.

18
19
20
21
22
23

---

[2] Benshoof tries to bring claims on behalf of his minor child. But as a non-attorney, Benshoof cannot represent other people including his son, with rare exceptions that are not present here. *Benshoof v. Fauci*, No. C22-1281-LK, 2022 WL 4465782, at *2 (W.D. Wash. Sept. 26, 2022) (citing *Johns v. Ctny. of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997) ("a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child" because "it is not in the interest of minors . . . that they be represented by non-attorneys" (cleaned up))). Thus, the Court finds that A.R.W.'s claims are not properly before the Court, as he has not appeared through an attorney. A.R.W.'s claims, if any, are thus dismissed without prejudice. *Johns,* 114 F.3d at 877.

32 ¶ 43. Jane Addams officials denied Benshoof "any contact with A.R.W."[3] and "full and equal access to the records of A.R.W." *Id.* ¶ 47.

Defendant Gregory Narver, Seattle Public Schools's general counsel, "required that Benshoof provide a birth certificate or court order as a condition of Benshoof . . . having contact with A.R.W. at Jane Addams" and access to his school records. *Id.* ¶ 59. Benshoof believes he was the only parent required to present this information. *Id.* ¶ 60.

A.R.W.'s mother, Defendant Jessica Owen, obtained a restraining order against Benshoof.  Dkt. No. 32-1 at 117-121. According to Benshoof, Owen lied to the court to obtain this restraining  order, and the District should have known it was invalid.

Benshoof continued to request access to A.R.W.'s records. On October 12, 2023, Benshoof contacted the District to request information about his son's enrollment. Dkt. No. 32 ¶¶ 139, 162. The District informed Benshoof that his son was not enrolled in the District anymore and that it could not tell him where his son had transferred because of Owen's restraining order. *See id.* ¶¶ 168–69. After continued back and forth, attorney Defendant Sarah Spierling Mack, brought this lawsuit on behalf of the District seeking a declaratory judgment stating that it has permissibly withheld certain information from Benshoof under the FERPA

---

[3] To the extent that Benshoof's counterclaims concern the occasion on which Vice Principal Justin Booker asked Benshoof to leave Jane Addams for refusing to wear a mask, they are not cognizable as the Court explains in a separate order. *See Benshoof v. Admon*, No. 2:23-CV-1392, 2024 WL 3227137, at *13 (W.D. Wash. June 28, 2024).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

exception that states a school need not disclose personally identifiable information from student records to a biological parent when prohibited by a court order like Owen's restraining order. Dkt. No. 3.

In a separate order issued this same day, the Court dismissed the District's complaint for lack of subject matter jurisdiction.

### 3.   DISCUSSION

Counterclaims may stand following a court's dismissal of the complaint so long as they have an independent federal jurisdictional basis. *See DHL Corp. v. Loomis Courier Serv., Inc.*, 522 F.2d 982, 985 (9th Cir. 1975) (holding that because "none of [the] counterclaims ha[d] an independent federal jurisdictional basis," they "[could not] stand following dismissal of the complaint.").

Benshoof sues eight Counter Defendants all of whom are residents of Washington. Dkt. No. 32 ¶¶ 9-16. Because Benshoof is also a Washington resident, the parties are not diverse. *Id.* ¶ 7; *see also* 28 U.S.C. § 1332.

As for federal question jurisdiction under 28 U.S.C. § 1331, Benshoof purports to plead eight counterclaims under 42 U.S.C. § 1983. But as explained below, these federal causes of action fail to state a valid claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Court dismisses these claims, and as a result, is without an independent basis for jurisdiction to adjudicate Benshoof's state law claims.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

### 3.1     Rule 12(b)(6).

Cliber, Mack, and Narver move to dismiss all counterclaims against them under Rule 12(b)(6). The Court will grant a Rule 12(b)(6) motion to dismiss only if the claimant fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). The plausibility standard is less than probability, "but it asks for more than a sheer possibility" that a defendant did something wrong. *Id.* (citations omitted). "Where a [claimant] pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). In other words, a claimant must have pled "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Although courts consider all factual allegations to be true, they "do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citations omitted). Thus, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Id.* (internal quotation marks omitted). A trial court may dismiss a claim sua sponte under Federal Rule of Civil Procedure 12(b)(6). *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) ("[A sua sponte] dismissal may be made without notice where the claimant cannot possibly win relief."). Sua sponte dismissal is appropriate where a claim is clearly frivolous, i.e., it has no

1
2

arguable basis in law or fact. *Bailey v. City of Olympia Prosecutor*, No. 3:22-CV-05973-RJB, 2023 WL 143846, at *2 (W.D. Wash. Jan. 10, 2023)

3
4

### 3.2    Benshoof's Section 1983 claims against private parties fail as a matter of law.

5
6
7
8
9
10
11
12
13
14
15
16
17

Benshoof alleges constitutional claims against several private parties: Mack, Owen, Lerman (Owen's girlfriend), as well as Cliber and Russ, private attorneys who have represented Owen in other state suits involving Benshoof. As this Court has told Benshoof many times, he cannot sue these private individuals under Section 1983 for his family-law disputes. *See Benshoof v. Admon*, No. 2:23-CV-1392, 2024 WL 3227137, at *5 (W.D. Wash. June 28, 2024).To state a Section 1983 claim, a plaintiff must "plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986). The Ninth Circuit has "recognized at least four different general tests that may aid us in identifying state action: (1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus." *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020) (internal quotation marks omitted).

18
19
20
21
22
23

Benshoof's allegations meet none of these tests, although he attempts to meet the second test—joint action. "Under the joint action test, courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002) (internal quotation marks omitted). The primary inquiry under the test is "whether the state has so far insinuated itself into a position of interdependence

1

2

with the private actor that it must be recognized as a joint participant in the challenged activity." *Id.* (internal quotation marks omitted).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

Benshoof alleges "Cliber, Mack, Narver, Owen, and Russ have knowingly and willfully conspired in joint action under color of law of the practice or widespread custom of Seattle School District No. 1 to deny Benshoof full and equal access to the records of A.R.W." Dkt. No. 32 ¶ 174. But Benshoof does not identify any public official that Mack, Owen, or Lerman allegedly conspired with. At most, he states that "'Seattle Public Schools [was *asked by attorneys for [Owen]* not to disclose information that would allow [Benshoof] to locate her and her son out of fear from their physical safety.'" *Id.* ¶ 183 (emphasis in original). This is the only alleged connection between the parties. Owen's unspecified attorneys' efforts to keep her and A.R.W.'s location confidential from Benshoof does not, as Benshoof suggests, support his allegation of a vast conspiracy against him. The mere fact that Owen resorted to the courts to obtain a restraining order against Benshoof and then tried to enforce the order through the school does not make her a co-conspirator or joint actor with the courts or school officials. Nor does it transform her private attorneys into state actors. *See Simmons v. Sacramento Cnty. Superior Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003) (finding a plaintiff's "conclusory allegations that the lawyer was conspiring with state officers to deprive him of due process . . . insufficient."); *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1184 (N.D. Cal. 2022) ("generalized statements about working together do not demonstrate joint action.")

22

23

Benshoof's other allegations against Owen, Lerman, Cliber, and Russ involve the Owen and Benshoof's custody disputes in state court. This Court has repeatedly

1    informed Benshoof these are not cognizable Section 1983 claims. *See Benshoof v.*

2    *Admon*, No. 2:23-CV-1392, 2024 WL 3227137, at *5 (W.D. Wash. June 28, 2024),

3    *Benshoof v. Keenan*, No. C23- 751-RAJ, 2023 WL 4142956, at *1 (W.D. Wash. June

4    12, 2023); *Benshoof v. Fauci, et al.*, No. 22-cv-1281-LK, Dkt. No. 7 (W.D. Wash. Oct.

5    31, 2022).

6        Because Benshoof's allegations against private parties lack state action, the

7    Court DISMISSES his Section 1983 claims against Mack, Owen, Lerman, Cliber,

8    and Russ.

9

10   ### 3.3    Qualified immunity bars Benshoof's Section 1983 claims against Narver.

11       Benshoof claims that, as general counsel for Seattle Public Schools, Narver

12   violated his First, Ninth, and Fourteenth Amendment rights. Benshoof alleges that

13   "Narver, and other Jane Addams officials under the direction of Narver, [followed a]

14   . . . policy or practice of denying Benshoof access to A.R.W. and full and equal access

15   to the records of A.R.W." Dkt. No. 32 ¶ 61. Specifically, Benshoof claims Narver

16   wrongfully withheld records and misapplied Washington statutes relating to school

17   records, RCW 28A.605.030 and RCW 26.09.225(1). *Id.* ¶¶ 168, 174.

18       "Qualified immunity affords limited protection to public officials faced with

19   liability under 42 U.S.C. § 1983, insofar as their conduct does not violate clearly

20   established statutory or constitutional rights of which a reasonable person would

21   have known." *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1115 (9th Cir. 2017).

22   The "'driving force' behind creation of the qualified immunity doctrine was a desire

23   to ensure that 'insubstantial claims' against government officials will be resolved

ORDER DISMISSING BENSHOOF'S COUNTERCLAIMS - 9

prior to discovery." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, n.2 (1987)). For this reason, courts must resolve "immunity questions at the earliest possible stage in litigation.'" *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 227)). To determine whether qualified immunity applies, courts must determine "(1) whether a public official has violated a plaintiff's constitutionally protected right; and (2) whether the particular right that the official has violated was clearly established at the time of the violation." *Id.* (citing *Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 788 (9th Cir. 2016) (en banc)). These two prongs may be considered "in whichever order would expedite resolution of the case." *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017) (citing *Pearson*, 555 U.S. at 236-239).

Here, Benshoof fails to overcome the first prong of qualified immunity and likewise fails to state Section 1983 claims against Narver. Taking them one at a time, the Court analyzes each of the alleged violations below.

First, Benshoof claims Narver violated his freedom of religious expression. Benshoof's allegations are nonsensical and incredibly vague. Benshoof states his "views and expression related to honesty, due process, equality under the law, and redress of grievances, are motivated by his sincerely held religious beliefs, are ways through which he exercises his religious faith, and constitute a central component of his sincerely held religious beliefs." Dkt. No. 32 ¶ 254.

Notwithstanding this lack of specificity, Benshoof's allegations still fail. "A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of [their] religion." *Jones v.*

*Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). "A substantial burden places more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify [their] behavior and to violate [their] beliefs." *Id.* at 1031–32 (internal quotation omitted). Benshoof does not show why Narver's refusal to provide Benshoof complete access to A.R.W.'s student records imposed substantial burdens on his unspecified religion.

Second, Benshoof claims Narver violated the Ninth Amendment by barring access to A.R.W.'s records. But "the Ninth Amendment [does not] provide a source of rights protected for purposes of pursuing a section 1983 claim." *Koenig v. Snead*, 977 F.2d 589 (9th Cir. 1992). As a result, Benshoof does not state a legally cognizable claim.

Third, Benshoof alleges that Narver deprived him of his First and Fourteenth Amendment rights by interfering with his parental relationship with A.R.W. without due process. "'Parents and children have a well-elaborated constitutional right to live together without governmental interference.'" *Hardwick v. Cnty. of Orange*, 980 F.3d 733, 740 (9th Cir. 2020) (quoting *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000)). "That right is an essential liberty interest protected by the Fourteenth Amendment's guarantee that parents and children will not be separated by the state without due process of law except in an emergency." *Id.* The First Amendment also protects family relationships from "unwarranted interference[.]" *Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018).

1
2
3
4
5
6
7
8
9
10
11

Narver argues that "the alleged denial of full access to student records . . . does not amount to unconstitutional state interference" especially since "Benshoof does not and cannot allege that the purpose of any alleged action by . . . Narver was to eliminate [Benshoof's parental custody[.]" Dkt. No. 38 at 15. The Court agrees. It is unclear how Narver's actions interfered with Benshoof's relationship with A.R.W. given that Narver cites the restraining order as cause for redacting A.R.W.'s current school from the records released to Benshoof. Even if the Court assumes without deciding that Narver misinterpreted the restraining order, it does not give rise to a constitutional interference claim. *See Woodrum v. Woodward Cnty., Okl.*, 866 F.2d 1121, 1126 (9th Cir. 1989) (state interference must rise beyond mere negligence of state employees carrying out their duties).

12
13
14
15

Fourth, Benshoof alleges Narver conspired with other Defendants to deny him equal protection of the law. Benshoof does not identify how Narver allegedly deprived him this constitutional guarantee. This unsupported, conclusory statement lacks merit and does not amount to a constitutional deprivation.

16
17
18

Narver is entitled to qualified immunity because Benshoof has failed to state a plausible violation of his constitutional rights. As a result, the Court DISMISSES all of Benshoof's Section 1983 counterclaims against Narver.

19
20

## 3.4 Benshoof fails to allege a Section 1983 claim for municipal liability against the District and King County.

21
22
23

A local governmental unit may not be held responsible for the acts of its employees under a respondeat superior theory of liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, to hold a municipality liable, the plaintiff

1
2
3
4
5
6
7
8
9

must show that "action pursuant to official municipal policy" caused the constitutional tort. *Id.* Municipal liability attaches when a plaintiff can show that "(1) [they were] deprived of a constitutional right; (2) the municipality has a policy; (3) the policy amounted to a deliberate indifference to [plaintiff's] constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. City of L.A.*, 977 F.3d 737, 741 (9th Cir. 2020). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

10
11
12
13
14
15

Benshoof sues the District and King County, but he fails to identify a municipal policy that caused him constitutional injury. Even if the Court broadly construes Benshoof's allegations and assumes that the District enacted a policy or made a decision that led to him being denied full access to A.R.W.'s records at Jane Addams, this unnamed policy did not cause Benshoof constitutional injury for the reasons discussed above. *See supra* 3.3.

16
17
18
19

As for King County, Benshoof's allegations relate to the restraining orders issued in King County Superior Court. Again, these are not cognizable Section 1983 claims. *See Benshoof v. Admon*, No. 2:23-CV-1392, 2024 WL 3227137, at *8 (W.D. Wash. June 28, 2024).

20
21

### 3.5   Benshoof fails to state claims under 42 U.S.C. § 1985 or 42 U.S.C. § 1986.

22
23

Benshoof also alleges several Defendants violated 42 U.S.C. §§ 1985(2), (3), and 42 U.S.C. § 1986. Section 1985(2) proscribes two or more people from conspiring

to deter "any party or witness" from attending court or conspiring to impede "the due course of justice . . ., with intent to deny any citizen the equal protection of the law[.]" Benshoof does not allege facts that show he was deterred from attending court.

Under Section 1985(3), a plaintiff must allege "(1) a conspiracy; (2) 'for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws'; (3) an 'act in furtherance' of the conspiracy; and (4) an injury or deprivation of rights." *Life Ins. Co. of N. Am. v. Reichardt*, 591 F.2d 499, 502 (9th Cir. 1979) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971)). But "[a] mere allegation of conspiracy without factual specificity is insufficient to support a claim." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1039 (9th Cir. 1990). As discussed above, Benshoof has not alleged a deprivation of his constitutional rights. Thus, he has not alleged a plausible claim under Section 1985(3). *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1168 (9th Cir. 2005) (noting that a plaintiff cannot state a § 1985(3) claim where they cannot state a § 1983 claim based on the same facts).

Anyone who knows about a Section 1985 conspiracy and has the power to prevent it, but neglects to do so, violates Section 1986. To plead a Section 1986 claim, a plaintiff must first plead a "preexisting violation of § 1985." *Gattineri v. Town of Lynnfield, Massachusetts*, 58 F.4th 512, 516 (1st Cir. 2023). Because Benshoof fails to allege a Section 1985 claim, he also fails to allege a claim under Section 1986. Accordingly, the Court DISMISSES Benshoof's claims under §§ 1985(2), (3) and § 1986.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

**3.6    The Court declines to exercise its supplemental jurisdiction over Benshoof's remaining state-law claims.**

Benshoof asserts a handful of claims under Washington state law. *See* Dkt. No. 32 at 38–47. But because he fails to state any federal claims, Benshoof's counterclaims state-law claims do not have an independent basis for jurisdiction. As a result, the Court declines to exercise its supplemental jurisdiction over his state-law counterclaims. *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) ("A court may decline to exercise supplemental jurisdiction over related state-law claims once it has 'dismissed all claims over which it has original jurisdiction.'") (quoting 28 U.S.C. § 1367(c)(3)). Thus, the Court DISMISSES Benshoof's remaining state-law claims.

**3.7    Leave to amend is denied.**

"Dismissal of a pro se complaint without leave to amend is proper only if it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Schucker v. Rockwood*, 846 F.2d 1202, 1203-04 (9th Cir. 1988) (internal quotations omitted). "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Ascon Prop., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

Benshoof has already amended his counterclaims once. The issues he raises merely reassert or rehash claims that he has made many times over in other actions that have been summarily dismissed. The defects in his claims cannot be cured by amendment, and Benshoof's conduct shows a continuous pattern of bringing non-meritorious litigation in this district. Given these circumstances, the Court

1
2
3
4

DISMISSES Benshoof's federal counterclaims with prejudice. *See id.* at 1160–61 (denying leave to amend was not abuse of discretion when, among other things, amendment was sought in bad faith and when the plaintiff had previously amended his complaint).

5
6

Dismissal of Benshoof's state-law counterclaims are DISMISSED without prejudice.

7

## 4.   CONCLUSION

8
9
10
11
12

In sum, the Court GRANTS in part Defendants' motions to dismiss, Dkt. Nos. 36 and 38, and DISMISSES all of Benshoof's federal counterclaims with prejudice and all of Benshoof's state counterclaims without prejudice. To the extent Benshoof attempts to bring claims on behalf of his son in contravention of *Johns*, those claims (i.e., A.R.W.'s claims) are dismissed without prejudice. *Johns*, 114 F.3d at 877.

13
14

The Court DENIES as moot Narver and Mack's motion to dismiss, Dkt. No. 24, and Benshoof's motion for default against Owen, Dkt. No. 42.

15

Dated this 19th day of July, 2024.

16
17
18

Jamal N. Whitehead
United States District Judge

19
20
21
22
23