UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SEATTLE SCHOOL DISTRICT NO. 1,<br><br>Plaintiff,<br><br>v.<br><br>KURT BENSHOOF,<br><br>Defendant. | CASE NO. 2:23-cv-1829<br><br>ORDER DISMISSING COMPLAINT |
| KURT BENSHOOF and A.R.W., by and through KURT BENSHOOF,<br><br>Counter-Claimants,<br><br>v.<br><br>SEATTLE SCHOOL DISTRICT NO. 1, NATHAN CLIBER, SARAH SPIERLING MACK, GREGORY NARVER, JESSICA OWEN, and BLAIR RUSS,<br><br>Counter-Defendants. | |

Plaintiff Seattle School District No. 1 ("District") brought an action for declaratory relief against Defendant Kurt Benshoof. Dkt. No. 3. The District seeks a

ORDER DISMISSING COMPLAINT - 1

declaratory judgment stating that it has permissibly withheld certain information from Benshoof under exceptions found in the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232(g). *Id.* at 1.

After reviewing the complaint and the other records on file, including the District's response to the Court's order to show cause why its complaint should not be dismissed, the Court concludes under Rule 12(b)(1) that it lacks subject matter jurisdiction and dismisses the complaint sua sponte.

## 1.  BACKGROUND

On October 21, 2022, King County Superior Court Judge David Keenan issued a Restraining Order ("Order") against Benshoof in the case *Owen v. Benshoof*, No. 21-5-00680-6 (King Cty. Sup. Ct.). Dkt. No. 3 at 56–60. The District received a copy of the Order. *Id.* at 2. The Order states that Benshoof "represents a credible threat to the physical safety" of his son and the mother of his son, A.R.W. and Jessica Owen, respectively. *Id.* at 57. The Order prohibits Benshoof from contacting A.R.W. and Owen, approaching A.R.W.'s school, and stalking either A.R.W. or Owen. *Id.*

On October 12, 2023, Benshoof contacted the District to request information about A.R.W.'s school attendance. Dkt. No. 3 at 4. The District informed Benshoof that his son was no longer enrolled in the District and that it could not tell him where A.R.W. had transferred because of the Order. *Id.* Benshoof then contacted the District's General Counsel, Greg Narver, to clarify the status of the Order and to assert that it did not preclude him from accessing his son's educational records. *Id.*

Two days later, Benshoof threatened to sue the District in a "RICO" action if it continued to withhold his son's records. *Id.* Benshoof and Narver exchanged a series of emails about Benshoof's alleged right to the documents and the procedures the District follows. *Id.* at 5–9.

Benshoof requested access to A.R.W.'s educational records held by Jane Addams Middle School, a school within the District. Dkt. *Id.* at 2. The District brought this lawsuit, seeking a declaration that it is prohibited from disclosing certain information contained in Benshoof's son's student records.

The District filed this action on November 28, 2023. Dkt. No. 1. On April 30, 2024, the Court issued an order to show cause why the Complaint should not be dismissed without prejudice for lack of subject matter jurisdiction. Dkt. No. 55. On May 21, 2024, the District responded to the Court's Order. Dkt. No. 56.

## 2.   DISCUSSION

**2.1   Legal standard.**

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013). They have a continuing duty to confirm their jurisdiction and are obligated "to inquire *sua sponte* whenever a doubt arises as to [its] existence." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977) (citations omitted); *see Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press.").

Courts are to presume "that a cause lies outside of the limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

Subject matter jurisdiction falls into two camps: federal question jurisdiction or diversity jurisdiction. Federal district courts have federal question jurisdiction in actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal diversity jurisdiction is found where all parties to the action are "citizens of different states" or "citizens or subjects of a foreign state" (i.e., aliens). 28 USC § 1332(a).

**2.2   The Court does not have subject matter jurisdiction to hear this case.**

The District asserts that this Court has subject matter jurisdiction "based upon 28 U.S.C. § 1331, seeking an interpretation of 20 U.S.C. § 1232g." Dkt. No. 3 at 3. Thus, the District tries to invoke federal question jurisdiction by reference to two federal statutes: the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232(g), and the Declaratory Judgment Act (DJA), 28 U.S.C. § 2201.[1]

---

[1] The Court considers only federal question jurisdiction, as diversity jurisdiction is plainly lacking. 28 U.S.C. § 1332 requires complete diversity, meaning every plaintiff must be diverse from every defendant. The District alleges that both Benshoof and the District are citizens of Washington. *See* Dkt. No. 3 at 3. Therefore, complete diversity is lacking.

ORDER DISMISSING COMPLAINT - 4

To start, the DJA is "procedural only" and merely provides the means for presenting a dispute to the court, but it does not provide a basis for subject matter jurisdiction. *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 191 (2014) ("[T]he Declaratory Judgment Act does not 'extend' the 'jurisdiction' of the federal courts."). Rather, the dispute itself must fall within federal jurisdiction. *Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671 (1950).

Because the DJA standing alone does not confer subject matter jurisdiction, there must be an independent basis for the Court's jurisdiction over the District's claim. *Nationwide Mut. Ins. Co. v. Liberatore*, 408 F.3d 1158, 1161 (9th Cir. 2005). "Federal courts have regularly taken original jurisdiction over declaratory judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 19 (1983).

So to determine whether it has jurisdiction here, this Court must assess whether FERPA and the provisions the District asks the Court to construe provide a basis for federal question jurisdiction. At issue is Benshoof's request for educational records. Such requests are governed by 20 U.S.C. § 1232g(a)(1)(A), which grants "parents of students who are or have been in attendance at a school of such agency or at such institution . . . the right to inspect and review the education records of their children," and § 1232g(a)(1)(B), which states that funds are to be withheld if the agency or institution has a "policy of denying, or effectively prevents, the parents of students the right to inspect and review the education records."

ORDER DISMISSING COMPLAINT - 5

The Supreme Court has not analyzed the exact provisions at issue here. But in *Gonzaga Univ. v. Doe*, the Supreme Court held that related non-disclosure provisions within FERPA did not confer a private right of action. 536 U.S. 273, 287 (2002). *Gonzaga* explains that FERPA was enacted under Congress's "spending power to condition the receipt of federal funds on certain requirements relating to the access and disclosure of student educational records." *Id.* at 278. FERPA also "directs the Secretary of Education to enforce [the nondisclosure provision] and other of the Act's spending conditions." *Id.* at 279 (citing § 1232g(f)). FERPA also requires the Secretary of Education to "establish an office and review board within the Department of Education for 'investigating, processing, reviewing, and adjudicating violations of [the Act].'" *Id.* (citing § 1232g(f)). It also conditions that funds may be terminated only if the Secretary of Education "determine[d] that a recipient institution 'is failing to comply substantially with any requirement of [the Act]' and that such compliance 'cannot be secured by voluntary means.'" *Id.* (citing §§ 1234c(a), 1232g(f)).

The parental access provisions here and the nondisclosure provisions the Supreme Court analyzed in *Gonzaga* are similarly structured. Neither set of provisions contain "the sort of 'rights-creating' language critical to showing the requisite congressional intent to create new rights." *Id.* The focus of the provisions is "two steps removed from the interests of individual students or parents and clearly [do] not confer [a] sort of *individual* entitlement.'" *Id.* at 287 (emphasis in original). The provisions also have an "'aggregate' focus," both speak in terms of "institutional policy and practice." *Id.* at 288. They are "not concerned with 'whether

the needs of any particular person have been satisfied.'" *Id.* at 288. Additionally, Congress's choice to "expressly authorize[] the Secretary of Education to '*deal with violations*,' § 1232g(f)…, and require[ment]…to establish a [designated] review board [to] investigate and [adjudicate] such violations, § 1232g(g)." *Id.* at 289 (emphasis in original). Congress also required most functions to be centralized. *See id.* at 290. The Supreme Court found it "implausible to presume that the same Congress nonetheless intended private suits to be brought before thousands of federal- and state-court judges, which could only result in the sort of 'multiple interpretations' the Act explicitly sought to avoid." *Id.*

More than a few courts have applied *Gonzaga*'s holding to 20 U.S.C. § 1232g(a), the parental access provisions. *See, e.g.*, *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 783 (2d Cir. 2002) (Sotomayor, J.) ("[W]e conclude that plaintiff does not have the personal right required for a § 1983 claim under § 1232g(a)."); *Freeman v. Allentown Sch. Dist.*, No. 24-CV-0670, 2024 WL 897835, at *2 (E.D. Pa. Mar. 1, 2024) ("FERPA does not give rise to a private cause of action."); *Robbins v. DePaul Univ.*, No. 13 C 06276, 2014 WL 7403381, at *3 (N.D. Ill. Dec. 29, 2014) ("FERPA does not support a private right of action for Robbins' section 1232g(a)(1)(A) claim.").

And several circuit courts have extended *Gonzaga*'s holding to conclude that *none* of FERPA's provisions give rise to a private right of action. *See, e.g.*, *United States v. Miami Univ.*, 294 F.3d 797, 809 n.11 (6th Cir. 2002) ("In *Gonzaga University v. Doe*, the Supreme Court held that the FERPA does not create personal rights that an individual may enforce[.]"); *Mo. Child Care Ass'n v. Cross*, 294 F.3d

ORDER DISMISSING COMPLAINT - 7

1034, 1040 n.8 (8th Cir. 2002) ("In *Gonzaga*, the Court holds that [FERPA], which provides for a review board established by the Secretary of Education to hear individual complaints of violations of the statute's provisions, does not create any individual rights . . . that are enforceable in private actions[.]").

The District has not identified, and the Court has found no cases in which another court has explicitly concluded that FERPA is privately enforceable. Instead, the District relies on *Owasso Indep. Sch. Dist. No. I-011 v. Falvo*, 534 U.S. 426 (2002), to argue the Supreme Court has "recognized jurisdiction in other contexts to interpret FERPA, despite there being no private right of action." Dkt. No. 56 at 2. But *Owasso* was decided before *Gonzaga*, as the Court noted that whether FERPA could be enforced under § 1983 was an "open question" that— before *Gonzaga*—was not so devoid of merit as to rob the Court of its subject-matter jurisdiction. *Owasso Indep. Sch. Dist.*, 534 U.S. at 430. The Court announced that it had granted certiorari in another case (i.e., *Gonzaga*) and would soon decide the issue. Thus, *Owasso* is neither binding nor persuasive authority.

The other cases cited by the District are similarly unavailing because they do not address subject matter jurisdiction at all or whether FERPA was privately enforceable. Dkt. No. 56 at 2. The cases cited make no attempt to reconcile *Gonzaga* with federal subject matter jurisdiction.

The District says that its complaint has been misconstrued in that it merely seeks an interpretation of FERPA, not to enforce its provisions. But if a student or her family cannot enforce FERPA in federal court, why would the District be entitled to file a federal action seeking a judicial ruling on its scope?

ORDER DISMISSING COMPLAINT - 8

The Court concludes that the parental access provisions of FERPA, like the nondisclosure provisions, do not provide a private right of action. The DJA cannot expand FERPA to provide such a right. The Court therefore does not have federal question jurisdiction over this matter. *See Magnoni v. Plainedge Union Free Sch. Dist.*, No. 2:17-CV-4043-DRH-AKT, 2018 WL 4017585, at *7 (E.D.N.Y. Aug. 22, 2018) ("[T]he DJA cannot create an individual right of action under FERPA if one does not exist.").

Because the Court does not have subject matter jurisdiction, the Court must dismiss the District's complaint. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) ("Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto. For that reason, every federal … court has a special obligation to satisfy itself . . . of its own jurisdiction….") (cleaned up).

### 3.  CONCLUSION

In sum, the Court DISMISSES the District's complaint for lack of subject matter jurisdiction. Dkt. Nos. 1, 3. The Court also DENIES as moot Benshoof's Motion to Dismiss, the District's Motion for Summary Judgment, and the District's Motion for Extension of Time for Service and for Costs. Dkt. Nos. 7, 29, 52.

Dated this 19th day of July, 2024.

Jamal N. Whitehead
United States District Judge