Hon. Jamal N. Whitehead

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| SEATTLE SCHOOL DISTRICT NO. 1,<br><br>    Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>KURT BENSHOOF,<br><br>    Defendant/Counterclaim Plaintiff,<br><br>A.R.W. By and Through His Father,<br>KURT BENSHOOF,<br><br>    Counterclaim Plaintiff,<br><br>v.<br><br>KING COUNTY,<br>NATHAN L. CLIBER,<br>MAGALIE E. LERMAN,<br>SARAH E. SPIERLING MACK,<br>GREGORY C. NARVER,<br>JESSICA R. OWEN,<br>BLAIR M. RUSS,<br><br>    Counterclaim Defendants. | Case No. 2:23-cv-01829-JNW<br><br>COUNTERCLAIM PLAINTIFFS' MOTION FOR *IN CAMERA* REVIEW OF EMAILS *re* CRIME FRAUD EXCEPTION<br><br>NOTE ON MOTION CALENDAR:<br>February 6, 2025<br><br>**ORAL ARGUMENT REQUESTED** |

CC PLAINTIFFS' MOTION FOR
*IN CAMERA* REVIEW OF EMAILS
WAWD No. 2:23-cv-1829-JNW
Page 1 of 18

Kurt Benshoof, CC Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

# I. INTRODUCTION

Counterclaim Plaintiff Kurt Benshoof ("Benshoof") moves for *in camera* review of specific emails between Counterclaim Defendants and/or their counsel under the crime-fraud exception to a claim of privileged communications.

Jessica R. Owen's ("Owen") perjury at trial on September 24, 2024, constitutes newly discovered proof of fraud that evidenced "there is `reasonable cause to believe that the attorney's services were utilized in furtherance of the ongoing unlawful scheme.'" *United States v. Zolin,* 491 U.S. 554, 563 (1989) (quoting *In re Grand Jury Proceedings,* 87 F.3d at 381)." *United States v. Bauer,* 132 F.3d 504, 509 (9th Cir. 1997)

The efforts by Owen and her attorneys, Blair Russ ("Russ") and Nathan Cliber ("Cliber") to conceal Cliber's subornation of Owen's perjury in family court (Dkt. #32, ¶¶62-70) included electronic communications between Russ, Cliber, and Seattle Public Schools general counsel Gregory Narver ("Narver") to prevent Benshoof from acting as assistant of counsel to A.R.W. and thereby render criminal assistance to the kidnapping of A.R.W. by Owen and her prostitute girlfriend, Magalie Lerman ("Lerman"). (Dkt. #32, ¶¶72-87)

Pursuant to LCR 7(d)(3) this Motion is noted for February 6, 2025.

# II. SWORN STATEMENT OF FACTS

1. Benshoof incorporates as if fully restated herein his Motion to Vacate the Order Dismissing Benshoof's Counterclaims. (Dkt. #75 and attachments.)

CC PLAINTIFFS' MOTION FOR
*IN CAMERA* REVIEW OF EMAILS
WAWD No. 2:23-cv-1829-JNW
Page 2 of 18

Kurt Benshoof, CC Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

A. **SMC No. 671384 - Owen Perjury**

  *1) Parenting Covenant*

  2.  Owen repeatedly admitted (Ex. #0038) the existence of the 12-year parenting agreement at Common Law between Owen and Benshoof in multiple court proceedings, yet claimed she needed to file a petition to decide parentage in order to establish a parenting agreement.

  3.  On August 21, 2021, Owen stated under penalty of perjury that "I have had a verbal agreement with Kurt that we split time with my son 50/50." (Ex. #0024).

  4.  On March 13, 2024, Owen stated under penalty of perjury in her declaration in SMC Case No. 671384 that she and Benshoof had a "long-standing unwritten agreement to share custody of [A.R.W.] on an alternate-weeks basis." (Ex. #0222 ¶2).

  *2) Withholding of A.R.W.*

  5.  In her August 21, 2021, Petition for Order of Protection, Owen claimed that Benshoof was "preventing my son from talking to me or coming home." (Ex. 0024)

  6.  In her March 13, 2023, declaration, Owen claimed that she "had not been able to have any contact at all with [A.R.W.] for almost three weeks" between August 15, 2021, and September 3, 2021, and that Benshoof violated the twelve-year parenting agreement by causing "a total absence of communication between A.R.W. and me during that nearly three-week period…" (Ex. #0225 ¶1)

CC PLAINTIFFS' MOTION FOR
*IN CAMERA* REVIEW OF EMAILS
WAWD No. 2:23-cv-1829-JNW
Page 3 of 18

Kurt Benshoof, CC Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

7.     During the prosecution's questioning of Owen on September 24, 2024, in SMC Case No. 671384 Owen testified that after Benshoof picked A.R.W. up from Owen's house on August 15, 2021, that Owen "didn't hear from [A.R.W.] for…you know…nineteen days."

8.     Under cross examination by Benshoof on September 24, 2024, Owen admitted that she repeatedly communicated with A.R.W. between August 15, 2021, and September 3, 2021. Owen testified that Benshoof "offered for me to come to [Benshoof's] house to…and explain…have a family meeting and explain why it was that I had been lying to our son and had chosen to harm him by getting him vaccinated. And that's when I decided to go to the courts to get help."

9.     Under cross examination by Benshoof on September 24, 2024, Benshoof asked, "Earlier today, Ms. Owen, you acknowledged in testimony that you spoke to [A.R.W.] on or around August 21, [2021]. Do you recall that Ms. Owen?" Owen replied, "I do." Owen also admitted to the Guardian ad Litem that "she had one call with [A.R.W.] during that time" between August 15, 2021, and September 3, 2021. (Ex. 0175 ¶3)

### 3) Child Abuse

10.     In her March 13, 2023, declaration, Owen claimed, "I do not hit my son or believe in corporal punishment." (Ex. 0228 ¶1)

11.     Under cross examination by Benshoof on September 24, 2024, in SMC Case No. 671384, Owen was asked, "Did you ever spank our son?" Owen testified, "Yes."

CC PLAINTIFFS' MOTION FOR
*IN CAMERA* REVIEW OF EMAILS
WAWD No. 2:23-cv-1829-JNW
Page 4 of 18

Kurt Benshoof, CC Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

12. Under cross examination by Benshoof on September 24, 2024, Benshoof asked Owen, "Did I ever spank our son?" Owen replied, "No."

13. Under cross examination by Benshoof on September 24, 2024, Owen was asked, "Did I ever yell at our son?" Owen replied, "Yes." Benshoof followed up by asking, "What time? Name once, please." Owen testified, "I don't recall the specific dates that you have yelled at our son." Benshoof then asked Owen, "When did I ever yell at our son? Please give one example." Owen testified, "I can't recall a specific time where you yelled at him."

### 4) Biological Father

14. Under cross examination by Benshoof on September 24, 2024, Owen was asked, "Have you ever had any doubt since you discovered that you were pregnant in August of 2008 that our son was conceived in your bedroom on my birthday, July 18, 2008?" Owen replied, "Not really, no." Benshoof asked for clarification, "What was that?" Owen testified, "Unfortunately, no."

15. Under cross examination by Benshoof on September 24, 2024, Owen was asked if after the first restraining order was denied on September 3, 2021, "Do you recall that you sought a petition to decide parentage, case number 21-5-00680-6 on or around September twenty-third [2021] in which you claimed you didn't know who the father was?" Owen responded, "I don't recall that, no."

16. Owen's petition to decide parentage listed Benshoof as a "*possible* genetic parent." (Ex. #0058)

CC PLAINTIFFS' MOTION FOR
*IN CAMERA* REVIEW OF EMAILS
WAWD No. 2:23-cv-1829-JNW
Page 5 of 18

Kurt Benshoof, CC Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

### 5) Presumption of Fatherhood

17. In her September 2021 petition to decide parentage Owen averred, "To my knowledge, no one is already presumed to be a parent by…***holding out***." (Ex. #0059 ¶8) RCW 26.26A.115 states that a person is presumed to be the parent of a child if "the individual resided in the same household with the child the first four years of the life of the child, including any period of temporary absence, and openly held out the child as the individual's child."

18. Owen has never disputed the fact that she lived with Benshoof during her entire pregnancy and that they lived together during the first four years of A.R.W.'s life. On August 21, 2021, Owen's declaration stated that Benshoof "has been acting in the role of father for 12 years." (Ex. #0027) On September 2021, Owen's sworn declaration stated that Benshoof had "acted as [A.R.W.'s] father for [A.R.W.s] whole life" (Ex. #0041) and that Benshoof "has always insisted on being treated as [A.R.W.'s] father and that [A.R.W.] was his [son]." (Ex. #0042)

### 6) Acknowledgement of Fatherhood

19. Under cross examination by Benshoof on September 24, 2024, Owen was asked, "Do you understand what a petition to decide parentage is?" Owen testified, "Yes, I do. We needed you to sign the birth certificate so that…it was as far as my lawyer understood it, it was a very ambiguous grey area where I acknowledged that you were the only person that I could have had a baby with at that time." Benshoof then asked, "How do you reconcile that with the fact that in your declaration in your

CC PLAINTIFFS' MOTION FOR
*IN CAMERA* REVIEW OF EMAILS
WAWD No. 2:23-cv-1829-JNW
Page 6 of 18

Kurt Benshoof, CC Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

petition to decide parentage you stated that you weren't sure if I was the father?" Owen testified, "I don't."

20.　In her September 2021 declaration and petition to decide parentage Owen stated under penalty of perjury that Benshoof "has, at all times, refused to sign an Acknowledgement of Parentage or otherwise agree to legal recognition as a parent of [A.R.W.]" (Ex. #0059) and that many times since A.R.W. was born "Kurt has refused my requests that he sign an acknowledgement of parentage." (Ex. #0042)

21.　Under cross examination by Benshoof on September 24, 2024, Owen was asked, "Did I text you on or about September 14, 2021, stating 'put me on [A.R.W.'s] birth certificate'?" Owen testified, "Yes, you did."

22.　On September 18, 2021, Benshoof texted Owen, "The fact that you refuse to amend [A.R.W.'s] birth certificate to reflect my legal name is prima facie evidence of your current and ongoing attempt to fraudulently assert sole legal custody of our child and deny me my parental rights to our son." Owen then blocked Benshoof's phone number. (Ex. #0752)

23.　On September 19, 2021, Benshoof had texted Owen, "Are you still refusing to amend [A.R.W.'s] birth certificate to show my legal name (as I have previously and repeatedly requested)?" (Ex. #0752)

24.　Under cross examination by Benshoof on September 24, 2024, Owen was asked, "You spoke of an acknowledgment of parentage, alleging that I refused to sign an acknowledgement of parentage. Can you tell me when you ever presented me with

CC PLAINTIFFS' MOTION FOR
*IN CAMERA* REVIEW OF EMAILS
WAWD No. 2:23-cv-1829-JNW
Page 7 of 18

Kurt Benshoof, CC Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

an acknowledgement of parentage to sign---ever?" Owen replied, "Multiple times. I don't have the exact dates.

25. "Can you state a year that you presented an acknowledgement of parentage that I allegedly refused to sign?" Owen testified, "I know for sure that I presented it in the year our son was born [2009]." Benshoof then asked Owen, "Can you name a year after the year our son was born [2009] that you presented an acknowledgement of parentage to me that I refused to sign?" Owen testified, "No."

### 7) Father's Rights

26. Owen and Magalie Lerman ("Lerman") repeatedly claimed that Benshoof had no parental rights as the father of A.R.W. In her Facebook post on September 6, 2021, Lerman stated that Benshoof had no "rights to my stepson even though he isn't on the birth certificate or any other legal documents." (Ex. #0256 ¶1)

27. Lerman and Owen are not married or in a legal domestic partnership. Benshoof is listed as the father on the birth certificate of A.R.W. (Ex. #0264)

28. Under cross examination by Benshoof on September 24, 2024, Owen was asked, "Were you the only one who thought that I had no rights to my son? Did your partner, Magalie Lerman, also believe that I had no rights to my son?" Owen testified, "I never believed that you had no rights to our son. I still don't."

29. Benshoof then stated, "For the record, you just stated under that that you've never said that I didn't have rights to my son. Interestingly, you said exactly that---under oath---which I would like to present evidence [of] to the court." Benshoof then presented Owen's September 2021 sworn statements from KCSC No. 21-5-

CC PLAINTIFFS' MOTION FOR
*IN CAMERA* REVIEW OF EMAILS
WAWD No. 2:23-cv-1829-JNW
Page 8 of 18

Kurt Benshoof, CC Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

00680-6 and asked Owen, "Can you read what it says?" Owen read aloud, "Kurt currently has no legal right to any tie with my son whatsoever…his parenting rights do not exist and cannot be affected by a restraining order." (Ex. #0065 no. 3)

**B. SMC No. 671384 - Ellis Perjury**

*1) Witness Interview*

30. On September 3, 2024, Benshoof conducted a witness interview with SPD Det. Ryan Ellis at the Regional Justice Center with Outland and King County prosecutor Stephanie Brennan ("Brennan") present.

31. Benshoof asked Ellis to cite the statute or court order which authorized Ellis to ignore the requirement to personally serve Benshoof the Final Orders and Weapons Surrender. Ellis stated that he could not recall that statute or court order. When Benshoof asked Outland and Brennan to cite the authorizing statute or court order, they refused to answer.

*2) Trial Testimony*

32. Under direct examination by Outland, Ellis claimed that on November 15, 2022, he legally served Benshoof the Final Restraining Order and Order to Surrender and Prohibit Weapons *by email*, and that Ellis was authorized to ignore the explicit personal service requirement because the courts authorized him to serve Benshoof by email due to Covid.

33. The Proof of Service filed by Ellis into KSCS No 21-5-00680-6 on November 15, 2022, stated: "***Important!*** *Do not use electronic service if your case*

CC PLAINTIFFS' MOTION FOR
*IN CAMERA* REVIEW OF EMAILS
WAWD No. 2:23-cv-1829-JNW
Page 9 of 18

Kurt Benshoof, CC Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

*involves the surrender of firearms…"* (Ex. #0244)  Ellis checked the box stating that he served an Order to Surrender and Prohibit Weapons. (Ex. #0245),

34. On cross-examination, Benshoof asked Ellis to cite the court order which authorized Ellis to ignore the personal service requirement.  Ellis could not cite any such court order.

35. Even at the height of the pandemic fear in April 2020, Washington Supreme Court Order No. 25700-B-615 stated that personal service was ***not*** suspended for restraining orders "directing the surrender of weapons" and "courts should still require personal service by law enforcement." (Ex. #0157 no. 4a)

36. King County Superior Court Emergency Order #36, issued on March 8, 2022, stated that it was "based upon" the Washington Supreme Court's February 19, 2021, Order."  Emergency Order #36 did not contain any language authorizing Ellis to forego the requirement to personally serve Benshoof the final orders.  (Ex. #1280-1282)

## C.  RCW 28A.605.030

37. To date, Narver and Seattle Public Schools have refused to provide Benshoof with his records requests.  Benshoof's friend, Jill Bong, made specific records requests in January 2024, seeking to obtain the email and/or text message communications between Narver and Owen's attorneys, Cliber and Russ.  To date, Seattle Public Schools has refused to fulfill Ms. Bong's records request.

CC PLAINTIFFS' MOTION FOR
*IN CAMERA* REVIEW OF EMAILS
WAWD No. 2:23-cv-1829-JNW
Page 10 of 18

Kurt Benshoof, CC Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

38.     Upon Benshoof's information and belief, Narver, Cliber, Russ, and their attorneys knew, on or before January 23, 2024, that the aforementioned communications between Narver and Owen's attorneys would reveal criminal intent by Narver, Cliber, and Russ to render criminal assistance to the kidnapping of A.R.W. by Owen and Lerman.

### III.   ARGUMENT & AUTHORITY

39.     Benshoof provided proof that Narver had acknowledged Owen's inconsistent material statements of fact on September 30, 2021. (Dkt. #32-1, pg. 109, ¶¶8-10)  Narver cannot claim that his not knowing *which* of "these statements are true" is a valid defense, because RCW 9A.72.050 does not require knowing which of the inconsistent material statements of fact is false.

40.     Counterclaim Defendants did not, and cannot, deny that Cliber, Narver, and Owen had knowledge of Owen's perjury on, or before, September 30, 2021.

41.     Counterclaim Defendants did not, and cannot, deny that Counterclaim Defendants and their attorneys knew that Cliber suborned Owen's perjury on, or before, January 23, 2024.  Nor can Counterclaim Defendants now claim that their conspiracy to violate Counterclaim Plaintiffs right of association was perpetrated in joint action under the City's and County's practices or widespread customs, nor that

private individuals acted as integral participants under color of state law. *Keates v. Koile* , 883 F.3d 1228, 1242 (9th Cir. 2018) held that a complaint adequately alleges defendants were integral participants in a violation of the right to familial association when defendants "were aware of [the child's] situation ... and participated in a meaningful way in a collective decision" to prevent Benshoof from knowing the whereabouts of A.R.W. *Hernandez v. Skinner*, 969 F.3d 930, 941 (9th Cir. 2020)

42.     Counterclaim Defendants, by refusing to refute Benshoof's proof of Owen's perjury and extrinsic fraud, are deemed to have tacitly admitted her perjury and fraud. "[T]he doctrine of estoppel by silence and acquiescence rest[s] upon the equitable maxim that, where a man has been silent when in conscience he should have spoken, he shall be barred from speaking when conscience requires him to be silent." *Boe v. Prentice Packing & Storage Co.*, 172 Wn. 514 (Wash. 1933) As the doctrine of equitable estoppel prohibits Counterclaim Defendants from now attempting to refute the proof of her perjury and fraud, Counterclaim Defendants and their counsel have no defense to Benshoof's Motion for *In Camera* Review.

43.     In *Reynaga Hernandez v. Skinner,* 969 F.3d 930, 941-42 (9th Cir. 2020), the Ninth Circuit discussed, for the first time, the minimum level of involvement

CC PLAINTIFFS' MOTION FOR
*IN CAMERA* REVIEW OF EMAILS
WAWD No. 2:23-cv-1829-JNW
Page 12 of 18

Kurt Benshoof, CC Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

needed for § 1983 liability under the integral-participant doctrine. Counterclaim Defendants may be deemed to have caused a constitutional violation under the "integral-participant doctrine," "only if (1) the defendant knew about and acquiesced in the constitutionally defective conduct as part of a common plan with those whose conduct constituted the violation, or (2) the defendant set in motion a series of acts by others which the defendant knew or reasonably should have known would cause others to inflict the constitutional injury." *Peck v. Montoya,* 51 F.4th 877, 891 (9th Cir. 2022); see id. at 889-92

44. Now that Benshoof has additional proof of Owen's and Ellis's perjury, *supra* at ¶¶2-36, nobody can deny that Benshoof was prevented from fully presenting Counterclaim Plaintiffs' case at trial through the deceptive prevarications by Counterclaim Defendants, including their claims that the Final Restraining Order was "presumptively valid."

45. Cliber, Lerman, and Owen did ""know[ ] about and acquiesce[d] in the constitutionally defective conduct as part of a common plan" to criminalize all contact between Benshoof and A.R.W. and "set in motion a series of acts by others which [Cliber, Lerman, and Owen] reasonably should [have] know[n] would cause others to inflict the constitutional injury" by prosecuting, arresting, and imprisoning Benshoof

CC PLAINTIFFS' MOTION FOR
*IN CAMERA* REVIEW OF EMAILS
WAWD No. 2:23-cv-1829-JNW
Page 13 of 18

Kurt Benshoof, CC Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

without jurisdiction or probable cause to deny Plaintiffs' right of familial association. *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)" *Peck v. Montoya*, No. 20-56413, at *21 (9th Cir. Oct. 18, 2022)

46. "When [Cliber and Owen] conspired to construct a false story about the events that took place...they deliberately set in motion a series of events that they anticipated (or should have anticipated) would lead to [Benshoof's] arrest, imprisonment, and trial... Not only did [Cliber and Owen] set the events in motion but, according to the complaint, they voluntarily provided crucial information, false though it was, at every step of the proceeding." *Harris v. Roderick,* 126 F.3d 1189, 1199 (9th Cir. 1997)

47. For private individuals such as Cliber, Lerman, Owen, and Russ "to act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting "under color" of law for purposes of § 1983 action. *Adickes v. S.H. Kress Co.*, 398 U.S. 144, 152 (1970); *United States* v. *Price*, 383 U.S. 787, 794 (1966)." *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)

48. Narver and attorneys Sarah Mack, Jessica Skelton, Michael Tracy, and Sarah Turner continued promulgating the false narrative that there was a "presumptively valid" restraining order against Benshoof when, in fact, Narver,

CC PLAINTIFFS' MOTION FOR
*IN CAMERA* REVIEW OF EMAILS
WAWD No. 2:23-cv-1829-JNW
Page 14 of 18

Kurt Benshoof, CC Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

Mack, Skelton, Tracy, and Turner knowingly and maliciously acted to conceal the fact that Cliber suborned the perjury of Owen in extrinsic fraud.

49. As it is beyond rational dispute that Counterclaim Defendants and their counsel had reason to believe, on or before January 23, 2024, that Cliber suborned the perjury of Owen in extrinsic fraud to kidnap A.R.W. by obtaining a fraudulent restraining order against Benshoof, Counterclaim Plaintiffs have established a prima facie case to invoke the crime-fraud exception. ""The test for invoking the crime-fraud exception to the attorney-client privilege is whether there is `reasonable cause to believe that the attorney's services were utilized in furtherance of the ongoing unlawful scheme.'" *United States v. Zolin,* 491 U.S. 554, 563 (1989) (quoting In re Grand Jury Proceedings, 87 F.3d at 381)." *United States v. Bauer*, 132 F.3d 504, 509 (9th Cir. 1997)

50. Further attempts by opposing counsel to feign ignorance will not suffice. "The exception applies "even where the attorney is unaware that his advice may further an illegal purpose." *U.S. v. Laurins,* 857 F.2d 529, 540 (9th Cir. 1988)." *United States v. Bauer*, 132 F.3d 504, 509 (9th Cir. 1997)

51. After this case was commenced, counsel for Counterclaim Defendants acted with reckless indifference to Benshoof's offers of proof that Cliber had suborned the perjury of Owen. Opposing counsel not only acted with reckless indifference, they then conspired to commit fraud upon the court to render criminal assistance to the

CC PLAINTIFFS' MOTION FOR
*IN CAMERA* REVIEW OF EMAILS
WAWD No. 2:23-cv-1829-JNW
Page 15 of 18

Kurt Benshoof, CC Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

kidnapping of A.R.W., and to conceal the efforts by Cliber, Narver, and Russ to render criminal assistance to the kidnapping of A.R.W.

> The attorney-client privilege must necessarily protect the confidences of wrongdoers, but the reason for that protection — the centrality of open client and attorney communication to the proper functioning of our adversary system of justice — "ceas[es] to operate at a certain point, namely, where the desired advice refers *not to prior wrongdoing*, but to *future wrongdoing*." 8 Wigmore, § 2298, p. 573 (emphasis in original); see also *Clark* v. *United States,* 289 U.S. 1, 15 (1933). It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the "seal of secrecy," *ibid.*, between lawyer and client does not extend to communications "made for the purpose of getting advice for the commission of a fraud" or crime.*O'Rourke* v. *Darbishire*, [1920] A. C. 581, 604 (P. C.).

*United States v. Zolin,* 491 U.S. 554, 562-63 (1989)

52.  As Counterclaim Defendants and their counsel communicated for the purpose of fraud upon this Court, Counterclaim Plaintiffs are entitled to in camera review of their electronic communications.

## IV.  REQUESTED RELIEF

Counterclaim Plaintiff Kurt Benshoof, on behalf of himself and A.R.W., moves for *in camera* review of electronic communications between Gregory Narver, Blair Russ, and Nathan Cliber sent between October 11, 2023, and January 23, 2024, as well as *in camera* review of communications sent or received by attorneys Sarah Mack, Jessica Skelton, Michael Tracy, and Sarah Turner between November 26, 2023, and January 23, 2024, which include any of the following words: (1) perjury; (2) kidnapping; (3) in camera; (4) crime fraud exception; (5) presumptively valid; or (6) criminal assistance.

//

CC PLAINTIFFS' MOTION FOR
*IN CAMERA* REVIEW OF EMAILS
WAWD No. 2:23-cv-1829-JNW
Page 16 of 18

Kurt Benshoof, CC Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

## VERIFICATION

I, Kurt Benshoof, do hereby declare that the foregoing is true and correct to the best of my knowledge under penalty of perjury in the State of Washington and the United States. Executed this 15th day of January in the year 2025, in the city of Mountlake Terrace, in the county of Snohomish, in the state of Washington.

This motion has 3,537 words in compliance with LCR 7(e)(4).

By: _____

    Kurt Benshoof *Pro Se*
    22701 42nd Place West
    Mountlake Terrace, WA 98043
    Phone: (425) 553-8112
    Email: kurtbenshoof@gmail.com

CC PLAINTIFFS' MOTION FOR *IN CAMERA* REVIEW OF EMAILS
WAWD No. 2:23-cv-1829-JNW
Page 17 of 18

Kurt Benshoof, CC Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com

# CERIFICATION OF SERVICE

Counterclaim Plaintiff Kurt Benshoof hereby certifies that on January 15, 2025, he did electronically file the foregoing document with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, and by email to the email addresses listed below.

**Counsel For Defendants**
**Sarah Mack and Gregory Narver:**
Jessica Skelton, WSBA #36748
1191 Second Avenue
Suite 2000
Seattle, WA 98101
Email: jessica.skelton@pacificalawgroup.com
Phone: (206) 245-1700

**Counsel for Defendant**
**Nathan Cliber:**
Michael C. Tracy, WSBA #51226
Sarah N. Turner, WSBA #37748
701 Fifth Avenue
Suite 2100
Seattle, WA 98104
Email: sturner@grsm.com
Email: mtracy@grsm.com
Phone: (206) 695-5178

**Counsel for Defendant**
**Seattle School District No. 1:**
Sarah S. Mack, WSBA #32853
1191 Second Avenue
Suite 2000
Seattle, WA 98101
Email: sarah.mack@pacificalawgroup.com
Phone: (206) 245-1700

**Defendant Blair Russ:**
Blair M. Russ, WSBA #40374
1000 Second Avenue
Suite 3660
Seattle, WA 98104
Email: bmr@tbr-law.com
Phone: (206) 621-1871

DATED: January 15, 2025

Signed:   ___s/ Kurt Benshoof____

Kurt Benshoof, *Pro Se*

CC PLAINTIFFS' MOTION FOR
*IN CAMERA* REVIEW OF EMAILS
WAWD No. 2:23-cv-1829-JNW
Page 18 of 18

Kurt Benshoof, CC Plaintiff
22701 42nd Place West
Mountlake Terrace, WA 98043
(425) 553-8112
kurtbenshoof@gmail.com